Case number 13-5342, Morgan Drexen, Inc. et al. Appellants v. Consumer Financial Protection Bureau. Mr. Miller for the appellants, Mr. Coleman for the appellate. Good morning. Our scheduling order suggested you would have been here a lot earlier, but with apologies, we have a lot of questions. May I say good afternoon, Your Honors. Good afternoon. Randy Miller. I represent the two appellants in this case. The first appellant, Kimberly Pruszynski, who is a lawyer. The second appellant is the legal support company that works for Ms. Pruszynski, Morgan Drexen. I'd like to begin briefly with a statement from the argument we just heard, of which the Court can take judicial notice, in which CFPB counsel said, we're not saying that there's no one who could come in here and challenge this statute. He said, pre-enforcement standing exists when a person engages in conduct, and because they engage in conduct, they face a credible threat of prosecution. Your Honors, Kimberly Pruszynski is here. She satisfies that standard. She should have access to an Article III forum to present what is a fundamental alleged liberty deprivation, but the District Court shut the courthouse door. This Court should open it. Your Honors, the District Court should be reversed for three reasons. First, the District Court failed to evaluate this as a collateral challenge. This is not a challenge to an agency's authority. This is not a defense to the merits of an free enterprise fund, a challenge to the agency's existence. That's a dispute that is collateral to the merits. This is distinguishable from cases involving established agencies, such as the FTC, a lot of FTC cases cited in the papers. This is an analytical error that infects the District Court's analysis. For example, the enforcement proceeding, but we don't even know that a plaintiff exists. The District Court assumed CFPB's existence, and that puts the cart before the horse. Second, the District Court did not make sufficient findings about the public interest and likelihood of success in the merits. This is a unique federal agency that's being challenged. This is an agency that the Court knows has a lone director, half a billion dollars in annual funding that's not subject to congressional appropriations. The director can act unilaterally. He doesn't need to go around and get the votes of other members of a multi-member commission. The director does not serve at the pleasure of the president, and the director can veto decisions effectively from seven other agencies that has overlapping power, and the courts have to enforce that. So this country has never seen anything quite like this before, concentrated power without meaningful limitations. So there's a substantial public interest, the importance of the public interest, the likelihood of success in the merits are things on which the parties engaged in extensive briefing, but the District Court did not make findings. Can the District Court in California reach the merits and find against Morgan Drexen on the challenges to the agency, and why isn't that issue precluded in the case here? Judge Pillar, the District Court in California issued a non-binding, non-final order denying a motion to dismiss. Why is it non-binding? Well, because under the case law, there's no res judicata of fact. It's not even binding on the District Court. It's not res judicata. It's clearly not issue preclusion, not claim preclusion. So I wonder if he's had a full and fair, if Morgan Drexen has had a full and fair opportunity to litigate, and yes, it's subject to revision by that court, but it's law of the case now. It's binding there, is it not? There's three points. Kim Kuczynski had no opportunity. Right, no, I was asking about Morgan Drexen. Morgan Drexen did not have an opportunity as it would in a pre-enforcement facial challenge before the District Court here, where the court can consider things such as the public interest, such as the balance of the equities, such as irreparable harm. In California, when you're adjudicating a motion to dismiss, you have to accept all of the CFPB's allegations as true. You're limited to just determining whether or not they've stated a claim on the merits. And again, the case that we're presenting is collateral to the merits. In California, the existence of the Consumer Financial Protection Bureau was assumed, and there was no true opportunity to test it. Completely different procedure. Last time I checked, it does exist. Well, if it's void ab initio, as we're claiming, as we want the District Court to consider, then it never existed. In other words, if the agency is structured in a way that violates the Constitution, then it does not exist. So the irreparable harm wouldn't be the enforcement action? I mean, that takes the place. We need to look at irreparable harm in a facial challenge because we need to know whether we've got a case of controversy. But there it was clear that there was a case of controversy in California. I just want you to tease out your distinctions a little bit. There was a decision on the merits there, and one thing you've said is that that was in the context of pleadings and not in the context of a summary judgment or a full factual development. No, it's not in the context of an equitable proceeding. We're alleging a liberty deprivation, so when we sought in the District Court here equitable and declaratory relief, we're not talking about the merits of the case at all. This is sort of like one step before that. Does the plaintiff even exist in California? If the plaintiff exists, if you assume that to be true, there's a case of controversy. There's an enforcement proceeding, and we can bring merits-based offenses. So you're saying that in defense of an enforcement proceeding, you couldn't receive a declaration of the unconstitutionality of the enforcing agency? No. There was no declaration before the court to decide or adjudicate. But if the court had held differently, you could not receive that declaration in the context of an enforcement action, I thought? The court's decision was on a motion to dismiss. It wasn't on a request for equitable relief. That request was made here in the D.C. District Court. All right. So the other argument is there was no abuse of discretion by the District Court here.  Yes, Your Honor. First of all, on the issue of standing for Pazinski, it is an issue that you can consider de novo. Now, it's a little bit unclear. So is your argument here that there's enough in the record that indicates that Yes. And she needs to say no more at this point. I think the record is replete with facts that were not fully confronted by the District Court that supports Pazinski's standing, and it supports her status as the lawyer supervising and responsible for Morgan Drexen, the legal support paralegal. And so if I can address Pazinski's standing for a moment, the evidence in the record, stepping back, there is statements in the Walter Letta Declaration. He's the CEO of Morgan Drexen. And the Kimberly Pazinski Declaration, she's the lawyer. They both say that she's a lawyer. She's practicing law. She has contractually engaged Morgan Drexen as the legal support company, that she relies and depends on Morgan Drexen's services, and that she is responsible for and supervises Morgan Drexen's conduct and the provision of this inextricably intertwined provision of legal services. So we've cited in the case the ethics rules that allows a lawyer to use a paralegal, just like a lawyer or a judge can use a law clerk, in an integrated provision of a legal function. And under the ethics rules, the lawyer is responsible. The lawyer is obligated. So one of the things that the district court did was fail to sort of look at this relationship. The ultimate issue on Pazinski's standing is the CFPB's argument that she's a near contractual counterparty. Well, I hired a binding service to bind the briefs that you have in front of you. That company is a near contractual counterparty. In this case, I also used a paralegal to develop the facts and provide legal services to Morgan Drexen and Kimberly Pazinski. That's a lot closer. In fact, it might not even be necessarily considered as a legal matter, given the ethics rules, a third party. It might be so bound together because of the ethics rules to supervise, to be responsible for the paralegal, but it is really one. So you're saying that Pazinski's standing supports Morgan Drexen's standing? No, I'm saying that the district court found that Ms. Pazinski lacked standing. And that should be reversed. But I'm just trying to get at why you're emphasizing the relationship so much. Morgan Drexen has. I mean, I think you can ask the counsel for CFPB. They're not going to dispute that Morgan Drexen has standing. They're a defendant in an enforcement proceeding. So it's kind of like the A-level standing. And the argument that they're making is, well, Pazinski, we made some unilateral decision not to sue. It's sort of like the Wizard of Oz. You're sort of saying, don't look, court, at the person behind the curtain who's responsible for the provision of legal services, who has to supervise, who's controlling all the levers. Don't look there. But they put up the curtain. They, the government, chose unilateral strategic decision to sue just a paralegal and say, lawyer, you're not going to be involved. But the lawyer is sort of so bound together that in the course of the enforcement action, California, and you have this on a motion to supplement the record or take judicial notice, there is all kinds of findings about Ms. Pazinski. There is all kinds of findings and indication out of the CFPB's papers indicating that the CFPB is accusing the lawyer. The CFPB is indicting the law practice. Just to make sure that you're covering what you stood up to cover, you had said at the beginning that you had three points. I did. I'm not sure that we heard the third, and I'm also not sure that we heard a response to Judge Rogers' question about the abuse of discretion standard that we have to apply to what the district court did in terms of the relief you sought. Absolutely. So the three issues that I meant to cover, the first one was that this is collateral, not a merits-based issue. The second issue is findings with regard to the public interest and likelihood of success, and that relates to the constitutional defects of the CFPB, which I'm prepared to go through today. The parties have briefed it, and it's before the court. And the third issue is Pazinski's standing. And I was saying that Pazinski's standing is de novo. And some of these, the decision to decline injunctive relief or to not exercise declaratory power is discretionary, so you have to review it on an abuse of discretion standard. But there are legal issues here, and the legal issues do merit de novo consideration. There are some mixed questions and some pure legal issues. One of them is, as I mentioned in the Free Enterprise Fund case, talks about the difference between a collateral issue. It is only going to come up once in a great while. I think this court last considered it in 2008 with the PCAOB, and now we're here with yet a new federal agency, the CFPB. It doesn't come along that often that there is a structural challenge. The FTC is here to stay. Your analysis, as I understood it, was you could bring this challenge in the California District Court. That's what I was explaining when I was answering the question of Judge Kellogg. I understand. And you say that you were denied the equitable relief you sought. Right. And you couldn't get that from the California District Court. Correct. And so were you saying that the California District Court, as I understood it, when the California District denied, granted the motion to dismiss, it rejected the constitutional challenge? It denied the motion to dismiss, and there was a ruling in favor of the government. Yes. We were defending out there. We moved to dismiss. It rejected your constitutional challenge. It rejected your constitutional arguments. But if the District Court had accepted and agreed with your constitutional arguments, why wouldn't that have provided full relief? There is a difference between a grant and a denial of a motion to dismiss. One is a final adjudication on the merits that has to be adjudicated. In fact, we didn't get that. We got the denial, which is a non-final, interlocutory, non-binding order. And with you on that, and the case is still proceeding, all right? Correct. Just so I'm clear. So that's why I have trouble with the re-adjudicata, because it was an interlocutory, non-appealable order. But I'm back to why was it an abuse of discretion for the District Court to say that this collateral challenge, as you characterize it, as to the unconstitutionality of the deal could not have been raised in the California District Court. And you might have won, ultimately, on that claim. And if you were to ultimately win on that claim, wouldn't you be getting the relief you're seeking? I suppose in some way. I see my time is up. May I answer? I see what you're saying, Your Honor, but that didn't happen. And there is this sort of fundamental distinction between the grant and denial of a motion dismissed. And the other error that was committed in the District Court here in D.C. is that we did file a motion for a temporary restraining order or preliminary injunction under this Court's Columbia Plaza case asking that that second filed, it was second filed, enforcement proceeding be stayed until there was a determination on the merits. We contend it is an abuse of discretion under the Columbia Plaza factors, which I don't think the Court below thoroughly addressed and did not make the public interest findings, the balance of the equity findings, and likelihood of success findings necessary to adjudicate that motion, that that was an abuse of discretion. Because when you do adjudicate these equitable motions, you have to make the findings. And if you don't make the findings, even though abuse of discretion is incredibly deferential, it is an abuse of discretion. It has to be either adjudicated by this Court or remanded. So the findings that the District Court erred in not making are, can you just list them? Yes. In seeking a motion for a temporary restraining order or preliminary injunction, there are four factors. This Court did not make which findings? The likelihood of success and the merits. The public interest is an overwhelming factor here. There's no findings on that. The public interest factor is similar to the, in the discretionary determination to exercise declaratory relief, you have to consider the public importance of the issue. Well, it didn't do this because it found no standing for Kuczynski and found you had the adequate remedy of law in the enforcement proceeding for Morgan Craxton. So it didn't even get to this. It didn't need to get to this. Right. Your point is they're wrong on standing and you're wrong on the adequate remedy of law, and it should go back for your, I think is your point, although you did raise the merits here, would go back to the District Court for you to litigate the merits. Yes. I think this Court could address the merits. I understand that. It is fully brief that I'm prepared to go through the significant structural problems with the CFPB. But there's Morgan Craxton on the one side. Everybody agrees Morgan Craxton has standing, and then there's the question about whether Morgan Craxton motion for a temporary restraining order or preliminary injunction and request for declaratory relief should have been heard. Morgan Craxton has standing. Has the Kuczynski. I'm just so stuck on why you – I understand that the question one asks in a context of a preliminary injunction or tariff is different from the question one asks in terms of the procedural packaging to get to the merits in an enforcement action. But it just strikes me as basic procedural law that you can get a determination on the constitutional merits of a scheme. This goes back to Shuttlesworth v. Birmingham in an enforcement action against you, and it's still, as you said, just law of the case. It's summary judgment. You come in and say, no, actually, Judge, reconsider the determination you made in denying our motion to dismiss. Now we have all this evidence, and we want to re-raise our constitutional challenges. You're going to get a determination one way or the other. It feels like a second bite of the apple. Oh, you didn't get what you wanted there. Taking the same issue here into district court, and I think the district court here said, no, I don't think we're going to allow you to end run. Go back and finish your business there. And I guess I'm trying to understand still, and the answers that you've given me are so far not computing. So I'd just like to hear if you have any other responses to that. Okay, so let me take – there's a bunch of issues that you just raised. Let me try to unpack what you just asked. The first question is, go back and finish what you started. We were first. This is what they started. We were first here. We filed our case first in the District of Columbia. Later, about a month later, the CFPB filed an enforcement action. I think Maryland issued a CID, and then you filed. So we're here, and CFPB counsel committed to an expedited proceeding. Judge Colarcatelli said, I'm going to move fast. She actually said it would be helpful if there's not an enforcement case distracting us while I'm doing that, and the CFPB wouldn't commit. Of course, later they ultimately filed their enforcement action. So we were first. The second part to answer your question is the Supreme Court's 2010 decision in the Free Enterprise Fund versus PCAOB says that in a situation like this where you're raising this collateral structural challenge, here's this agency that doesn't have any of the checks and balances and oversight that's required of a federal agency. It's void ad venitio. It doesn't even exist because of the lack of the constitutionally required checks and balances, that that's the kind of collateral structural challenge, the Supreme Court said, that may proceed even though you haven't finished this administrative, the enforcement action. So the reason why we think, and we never took the position, by the way, that we were just going to see which one gave us the relief we wanted. We at all times consistently throughout the papers, including when we're in the midst of this emergency briefing in the District of Columbia District Court and suddenly there's this California action that crops up, we never said, well, we'll take our shot there and we'll come to D.C. and we'll see who gets the better shot. We always said, no, the reinforcement constitutional challenge to the structure of this agency should be heard in this equitable declaratory proceeding that we started first. And we said, please, Judge Colartelli, stay the prosecution, stay, order the CFPB not to prosecute that California case until we finish what we're doing here. Can I ask you a question? If there were a final judgment in California, that would be preclusion as to Morgan-Drexen, correct? Well, it would be subject to Ninth Circuit appeal. Yes. The case is, by the way, I should note, scheduled for trial in February.  Can you just answer the hypothetical? I want to make sure I get that. Is there a ratio to comment? Well, I think it would be. Right. Of course. But we've asked that the proceeding be stated. You acknowledge that basic tenet. The point is, from your perspective, I think, your argument is it's not final yet for purposes of preclusion principles in California. Right. And you have before you today, we requested the temporary restraining order to stop the CFPB from prosecuting that case. If you agree with us and you reverse that part, you say it was an abuse of discretion, you can order that that case be stated. In fact, that's what we would suggest, is that that case be stated so that we can have, now we're not looking to take two bites at the apple. We will take this circuit's final determination as to the merits of whether this agency is constitutional or not. I don't know why you'd commit to that. But anyway. You've got another court to try for. I'm committing to it right now because I think that that is the teaching. I mean, we obviously are basing a lot of what we're doing here on the Free Enterprise Fund case. Let me just ask, I'm not arguing or proposing a question about claim preclusion, but about issue preclusion. I'm wondering if within the case in California, it had not been at the motion to dismiss state, but if you had moved for summary judgment on the question of the unconstitutionality of the agency and had lost that, would that not be issue preclusion? I mean, it's subject to ultimate finality on the merits. But I think there are cases that would hold in parallel pending litigation that you should treat that as issue preclusive. Unless you can point to some kind of procedural opportunity that you lacked in the California case. It's the same issue on the merits. I think you're right. Okay. I think it would be. We didn't go for summary judgment in California. We moved in this court that that proceeding stop, that the CFPB be prevented from pursuing that case. All right. Why don't we hear from counsel? Thank you, Your Honor. And we'll give you a minute on rebuttal. Thank you. Good morning. May it please the Court, good afternoon. We ask the Court to affirm the district court's judgment. The district court did not abuse its discretion in withholding the equitable and declaratory relief sought by Morgan Drexen in this case. In terms of the equitable relief, it relied on the well-established proposition that a court of equity should not act when there is an adequate remediate law and the movement will not suffer reputable harm in the absence of an injunction. As this court recognized in its questioning of Pelham's counsel, Morgan Drexen had an adequate remediate law. He was able to move to dismiss the Bureau's enforcement action on the basis of the alleged constitutional reform. Is there any case that says when you have a pre-enforcement action challenging a rule that you terminate that once an enforcement action has been brought against that same party? No. I have not ever heard of that. The Deaver case is the closest analogue, Your Honor. It's criminal. It's a criminal matter, although we have a system of pre-enforcement review that Avid Labs ushered in in this context. We don't have it in that context for the most part. So we don't believe that the court needs to adopt the rule that you suggested, that any time there is a declaratory judgment action that the district court agrees to hear, that if then the affirmative case is brought, that the declaratory judgment action has to stop. Why wouldn't that be, under your theory, I'm not sure I agree with this, but why wouldn't, under your theory, that be an adequate remedy at law, namely the other proceeding? So it could be an adequate remedy at law. So we would say that the district court would commit probably a reversible error by enjoining the other action, but the district court could agree to the declaratory judgment. I see that point. That goes to the merits. I would think that if you have a pre-enforcement action, you're challenging a rule or an agency, and then there is an enforcement action brought against you, and as a defense in that enforcement action you challenge the rule or the agency. It would seem to me that both proceed and one could end up, if all the parties are the same, one could end up being some kind of preclusion depending on which gets decided first, but I wouldn't think that either of them automatically gets terminated by what you're articulating here, namely the adequate remedy at law. I've never seen a case that does that. So, Your Honor, I think one thing that's important to point out with respect to your question is that there is no automatic rule. The question is could the district court agree to stay its hand in the declaratory judgment action in order to let all the issues be resolved in the enforcement action, and if it did so, was that an abuse of discretion? And here the district court, on a number of factors, determined that she would not exercise her permissive authority to provide declaratory relief, and that was not an abuse of discretion. It was consistent with this court's precedence as well as the district court's. So you're, in essence, saying, which does happen, where two issues are pending between the parties in different courts, that if one court simply holds tight until the other court decides that that's okay. It seems like more than that happened here, but maybe I'm wrong. So in any situation in which there's parallel litigation pending in two different federal district courts, the federal district courts try to resolve that potential conflicts that arise from parallel litigation, and the district court in this case determined that she would not grant declaratory relief because she recognized that the Mormon-Grexon would have a complete opportunity to raise its constitutional arguments as a defense. And so that was a completely appropriate exercise of her discretion under the declaratory judgment. It was also completely appropriate. So then Pazinski? Yes, Your Honor. So Pazinski, the court- The sole issue there standing, right? Well, so the sole issue there that the district court reached was standing. Our position is that Pazinski's alleged harm, although she does not support her allegations of harm with any citations to record evidence, but her alleged harm is completely derivative of the Bureau's enforcement action against Morgan-Grexon. So issuing Pazinski a declaration in the lower court or here with respect to the Bureau's constitutionality wouldn't affect the Bureau's enforcement action in California and therefore would not redress her injury. So there are equitable discretionary arguments that the Bureau has with respect to Pazinski. We do view her as lacking standing, however, and the court need not reach those other issues. It should simply- I think they reply that Pazinski is, in essence, a regulated party by the agency, by the Bureau. There's no support for that argument in the record, Your Honor. Pazinski's declaration is two pages long. She never says anything about being subject to any rule or statute enforced by the CFPB. What are the documents that we received yesterday that I gather were developed in the California case? The documents that the plaintiffs have-I'm sorry. It's the plaintiffs have asked you to take judicial notice of. So the only document there, Your Honor, is a Bureau statement of undisputed facts that just cites Pazinski's deposition testimony that she was a third-party witness in the Bureau's enforcement action. This is nothing. It certainly doesn't demonstrate that she is subject to regulation by the Bureau. Let me ask you this. You heard me ask the question of counsel. If her position is that her legal practice depends on the paralegal services that Morgan Drexen provides, then while the Bureau has no authority to enforce the practice of law, still she is an injured party, potentially, because if Morgan Drexen is found to be violating the law, that, A, could affect her ability to practice and to retain and attract clients. And the CID, to Morgan Drexen, is seeking records of her clients. I mean, she's not a stranger to the matter, she contends. So, Your Honor, again, what the record discloses is that Pazinski uses Morgan Drexen as a paralegal. What the record does not disclose is that Pazinski uses the services of Morgan Drexen that are at issue in the California litigation. That is not contained within the record. Nor does she say that I depend upon Morgan Drexen's ability to charge illegal upfront fees or to Well, she's in a little bit of an awkward position with respect to that, isn't she? I mean, she's in the documents that we most recently received, and we haven't ruled on whether those are properly before us. And I don't think I've really heard your position on that, except to say that you think they're irrelevant. But they do seem to contain various statements by her about her involvement with various of the various programs of Morgan Drexen's that are being challenged. They put her much more specifically than her declaration in the case in our district to write in the crosshairs of the kinds of things that are being challenged, the kinds of practices that Morgan Drexen has designed and worked with these attorneys to carry out. So with respect to that document, again, that's the Bureau's statement of undisputed facts. Right. Those are the facts that the Bureau thinks are established. But it is not Pazinski's deposition itself. Well, there's citations to her deposition. They're presumably facts that you think can be proved in court. The facts we think that they're undisputed, but none of them relate to Pazinski standing here. Let me ask you what I'm not clear about in your answer is, as I understand the enforcement action, in part it's related to this charge that Morgan Drexen has been imposing in connection with what it calls bankruptcy services. And she says that's her practice. And she uses Morgan Drexen. And while she's not the target, as you say, of the enforcement action, why isn't she – what does she have to show to show that she is potentially injured when she says her clients are concerned about these documents being in the government's hands and what will happen to them? And while the government comes back and says, we made it very clear that Morgan Drexen could raise any appropriate privilege, who knows whether that would protect her clients' documents. So there are two issues, Your Honor. The first is the harm to Pazinski from the Bureau's enforcement action. As the district court correctly noted, Pazinski has not suggested that the services she relied upon from Morgan Drexen were those that are issued in that court. But can I just be clear about that? In other words, if the enforcement action alleges that Morgan Drexen is charging unlawful fees for bankruptcy services, and that's her practice, and she's the attorney involved in that, is that not a close enough connection? No, Your Honor. Well, so first of all, the record doesn't disclose any of that relationship. Well, I'm not even following what you're saying, so maybe I'm misreading what this document is. But on pages 82 and 83 of the document that I gather you submitted to the court in California, there's a discussion of Attorney Kimberly Pazinski, in fact, relating to her. She became engagement counsel in 2011. She has 463 consumers assigned to her in the dual program, which I gather is exactly the program at issue here, the dual consumer and bankruptcy. She has 300 or 400 bankruptcy clients. She's only filed four bankruptcy petitions. Sounds consistent with the pattern that you all have alleged in enforcement. Her clients paid her the bankruptcy retainer fee. They're not refunded that fee. Eighty percent of her income has been generated from this. That's not enough to show that she is involved in the kind of practice at issue here and therefore has standing to challenge. So, Your Honor. Maybe I'm just misunderstanding what this document is. Right. So that document, to be clear, was submitted about a month ago in the California District Court. It was not submitted in this litigation. It was submitted here yesterday, as far as I know. Right. It's asking the court to take judicial notice of a fact. When the court takes judicial notice of a fact, it's the fact of something going on that, for example, there's pending litigation. It's not necessarily the same as taking judicial notice of the Bureau's characterization of Pazinski's deposition testimony. And so, just to finish Judge Rogers' questions, so even if Ms. Pazinski could establish and you relied upon this document to establish that, she did have a relationship with Morgan Drexel with respect to, you know, that she employed them and they provided services that are at issue in litigation in California. Number one, as the District Court noted, she has not demonstrated that she would be unable to find another paralegal. But you don't need that for standing. No. I mean, she's saying that you've accused her. You've accused her in the California litigation. But, in fact, we have not accused her, Your Honor, of any illegal conduct in the California. She's saying, as I understand it, that if the agency is correct, the Bureau is correct, her paralegal has been engaged in unlawful activity and she is a lawyer who is responsible for the activities of Morgan Drexel in this bankruptcy area in which she practices. And the more concrete connection is the Bureau asked for records of her clients. Right. So I didn't have an opportunity to get to the second question yet, Your Honor. But let me address the first. So, again, even if Ms. Pazinski could show that Morgan Drexel,  that she could not find another paralegal to provide her services such that her businesses would not suffer, she's still not demonstrated regressibility. So with respect to her alleged reputational harm or concerns about her ethical obligations, there's nothing that a declaratory judgment in this court or down below would do about those issues, would have any effect on those issues. So I'm just not sure how a declaratory judgment about the Bureau would redress her harm. If she's committed ethical violations because Morgan Drexel is engaged in conduct that violates laws that they don't challenge, then that's between her and the Connecticut State Bar, and a declaratory judgment about the Bureau's structure won't give her any regress. Now, Your Honor, I want to address your question about the document request. As the district court found, we issued a document request to Morgan Drexel, and much of Pazinski's declaration is concerned with the prospect that Morgan Drexel will provide her attorney-client privilege information to the Bureau. A couple things. One, our rules and our correspondence with Morgan Drexel were quite clear that they could assert a claim of privilege. It says appropriate privilege. Well. I mean, I know. But, you know, it's a fuzzy word. So we're going to litigate whether they can raise this particular privilege. So let me play out the way it would work, Your Honor. Have they asserted privilege? Indeed, they did. If Morgan Drexel asserts privilege with respect to a CID, then we don't get the documents until we go to a district court and ask the court to enforce the CID. And Morgan Drexel says, I'm attorney-client privilege, all that, and you say, well, they don't have any standing to raise that. No, Your Honor. We would not be making that argument in that context. If an individual claimed attorney-client privilege with respect to a CID that we issued, they would have their day in court and they would argue. No, but the CID wasn't issued to her. It was issued to Morgan Drexel. Presumably, she would have been able to intervene in that case if she felt that Morgan Drexel wasn't adequately protecting her client's privileged information. And the other point on the CID, Your Honor, is just that that is in the past. What they are seeking here is forward-looking declaratory injunctive relief. We have not sought enforcement of any CIDs. We have been engaged in litigation in California, you know, for a year, over a year. And so there is no prospect, certain dependent prospect, of any harm from any of those CIDs. We've been engaging in discovery. And so any harm from the basis of CIDs, which was always illusory, as the district court correctly noted, is completely in the past now. Are there no further questions, Your Honor? So harm she was suffering in the past is not redressable. Right, Your Honor. So she's seeking forward-looking declaratory injunctive relief. And so what she needs to demonstrate is an ongoing injury or a substantial threat of a... I mean, I'm a lawyer, and my key staff is Morgan Drexel. And I'm claiming that it's interfering with my ability to practice. And furthermore, my clients are concerned of my connection with Morgan Drexel, whether their records are going to be protected. And there's just nothing I can do about it, except write my clients letters saying, you know, I did nothing wrong. Well, so none of that, you know, there's no evidence in the record that Kaczynski's been losing clients or that clients have expressed concern or anything of that nature. Secondly, Your Honor, and this gets a little bit to the... She says, without complete trust in me as their attorney, clients will be unwilling to hire me to help them. Yes, Your Honor. Your Honor, in... So I'm not sure how this Court could redress any... First of all, she hasn't said that there's any clients who've expressed any concern with respect to her because of the Bureau's enforcement action. And secondly, it's not clear how this Court could redress any concerns that have been expressed. So that's the main problem? That is a significant problem. It's the third problem. Redressability... Even if she's injured, even if it's caused by the enforcement action or the threat of enforcement action, there's nothing that a court can do to redress her injury. So a couple points. There's the constitutional element of redressability, which is part of the standing analysis, and then there's the remedial question, which is, what relief can this Court provide? Now, Kaczynski did move to intervene in the California District Court. And the district judge there denied her motion to intervene on the grounds that she had not sufficiently demonstrated her interest in the litigation. She failed to appeal that decision to the Ninth Circuit. On redressability, if the agency were declared, to take their theory to the hilt, were declared unconstitutional in some respect, that would redress her injury. I don't know if it would, Your Honor. Morgan Jackson has been accused of... Because they wouldn't be able to enforce these provisions. I mean, that doesn't even seem close to me. If the agency that's doing the regulation is gone, again, to take their argument to the hilt, and we're just talking about standing here, then that's obvious redressability. Well, in this case, Your Honor, first of all, A, you'd have to buy the argument, and B, you'd have to... We're supposed to at the standing stage. We're supposed to buy the merits, the plaintiffs. And then to think that the appropriate remedy would be to abolish the agency. But even if you were to get there, Your Honor, there are several other agencies who can enforce the laws that are being enforced against Morgan Jackson. I think she's willing to take that chance. You said there are other people she could hire to do her paralegal work. I just don't get the sense that you're meeting us on what the kind of injury is that is required for standing. She just is required to show some concrete injury. She wants to challenge the agency. She thinks the agency will be eliminated, and she thinks that will substantially redress the harms that she faces. Well, Your Honor, at this stage, at the summary judgment stage, she needs to show all of that through evidence. And she's not shown that elimination of the agency will redress any harm, because she hasn't shown any harm to begin with. So there's not evidence of harm to her. There's not evidence of harm to her, nor is there a demonstration that the court can redress it. You said at the summary judgment stage, but we are reviewing from this district court something, a determination that's made at the pleading stage. No, Your Honor. This was made on cross motions for summary judgment. So Kaczynski's standing has to be demonstrated by demonstration through specific facts, either in affidavits or otherwise, that she has suffered injury. So she has her affidavit or her declaration. That's her declaration, Your Honor, which is the principal evidence that relates to her statement. Sorry, I'm mixing up my CFPB cases. Oh, no. It's okay, Your Honor. That's what I've been focusing on, what she says in her sworn declaration. She says her clients are troubled. Their records were taken in the CID. She's concerned whether she's going to lose clients. So that's all in her sworn declaration. Right. So just to be clear, Your Honor, the portions of the declaration you're referring to refer to her concern about the Bureau of CIDs. Right. And specifically that Morgan Drexen may provide privileged information in response to the CIDs. As we've already discussed, that harm was never elucidated, and it certainly can't support standing to seek forward-looking declaratory injunctive belief here because there is no longer any attempt by the Bureau or otherwise to enforce those CIDs, and there never has been. The litigation is still ongoing. What I was thinking of is as you move forward, suppose you need discovery. So discovery is closed in our enforcement action, Your Honor. And nothing more was sought from her. Suppose tomorrow you move to reopen discovery and the district court grants it and then you seek some more records of her clients. So let me play out your hypothetical, Your Honor. Let's assume, just so you understand the record, discovery is closed. We have filed a summary judgment motion on the whole case. But let's assume that discovery is reopened for some reason and we then seek discovery from Ms. Puszynski directly or from Morgan Drexen that relates to something about Ms. Puszynski. They would have every opportunity in the state of California to assert claims of privilege under the Federal Rules of Civil Procedure and the Federal Rules of Evidence and to litigate those claims in that court. And so it's not clear that this court needs to be involved. Again, this gets a little bit to the remedial issues that are before the court, but it's not clear what this court can do to address any injury, even if you thought that the Bureau's enforcement action was causing injury to Ms. Puszynski. There is no realistic remedy that this court can provide that could do that. Any judgment, if the California district court rules in the Bureau's favor, and it may or it may not, that litigation is ongoing. But if it does, Ms. Puszynski and Morgan Drexen itself will have the ability to raise their constitutional claim again, or at least Morgan Drexen will have its ability to raise its constitutional claim again in front of the Ninth Circuit, and if Ms. Puszynski wants to seek to intervene again on a stronger basis than she did in the Central District of California the first time around, then she can attempt to do so. All right. Anything further? Thank you. Thank you, Your Honor. I think I was out of time. May I have a few moments? Yes. So let me deal with Puszynski standing since I've dominated. I'd go back to the Wizard of Oz. It is the discomfort with which the questions and the answers we just saw reflect that there's a denial of reality here that Puszynski is the lawyer and Morgan Drexen is the paralegal and they are joined at the hip. And again, going back to the standard that we heard, that if someone is engaged in conduct and there's a realistic threat of prosecution, that there's pre-enforcement standing that satisfies. So as to Puszynski, I think there was a suggestion just now that, well, there wasn't very much we did in the record here. Well, I thought there was also the suggestion that the statute doesn't allow it to pursue Puszynski's legal practice. Well, that's an interesting issue. She has a very unique interest in the right to be free in her law practice. She's a Connecticut lawyer and she deals with the state bar in Connecticut and she deals with state regulators. And so there's a Tenth Amendment issue here that the federal regulators shouldn't be mucking around. Is that the Tenth Amendment that you've been raising? No, I didn't see that in your brief. It is, Your Honor. It's in the brief. It is? It is. It's actually one of the basis of standing. It's that there is this practice of law exclusion under the Dodd-Frank Act that prohibits CFPB from regulating the practice of law. And so we talk all about this because this is something that's quite unique to Puszynski. It's her law practice, right? I got that. I just didn't get the Tenth Amendment. So we'll just circumvent that and go after the Puszynski. Your parents said she's a regulated party. Absolutely. You don't cite the Tenth Amendment. Your Honor, I'm not going to find it now, but I promise I'll find it for you. Well, I'm looking at the constitutional amendments you say you cite. You cite the Fifth and the Fourteenth. So in any event, proceed. Your broader argument is that her activities are being regulated and affected by the agency, and therefore she should have a pre-enforcement right to challenge that agency like we do, right? Yes, Your Honor. Yes, Your Honor, and that's absolutely true. And even if you were to consider her to be a contractual counterparty, standing is still possible for contractual counterparties. It's a higher burden, but we think that it's clearly satisfied here. Your Honor, the practice of law exclusion, that's one of her arguments, is that she wants the ability to challenge the CFPB because she thinks that, you know, she's been given a clean bill of health by the state of Connecticut, that's in the record, but now she's dealing with federal regulators, and that's part of the problem. That's why she has taken on this burden that's somewhat daunting, but courageous to have to come into court as a lawyer and challenge a new federal and powerful agency, but she's done so because she thinks that it's not proper for the CFPB to be regulating her law practice to begin with under the exclusion of law provision in Dodd-Frank and should not be doing so indirectly through her paralegal in this contrivance where the paralegal is named, but not the lawyer. Just a few JA sites, just so you have it. We're not relying on the pleading here, but we do talk about Kaczynski and the pleading, and the disposition below was dismissal. So there's an argument that you have to pick our allegations in the complaint to be true. That's JA 8 to 10. There's an extensive discussion about Kaczynski and her relationship with Morgan Drexen. We're not relying on that. As counsel said, there was cross motions for summary judgment. We submitted the Kaczynski declaration, the Walter Leda declaration. He's the Morgan Drexen guy talking about Kaczynski. The Shaheen declaration, which talks about the CFPB statement during the investigation that they were targeting the lawyers. Beyond this, we provide a specific citation in our statement of facts that are not controverted about Kaczynski. I'll give you just one example. Well, it's at JA 513 and 515. Here we go. So if you go to JA 513, this is our statement of uncontroverted facts in this court, in the D.C. court. Kaczynski contracts with Morgan Drexen to provide non-attorney paralegal services that support her law practice. The CFPB's response is CFPB lacks knowledge about whether the statement is true as to Ms. Kaczynski, and to the extent that this statement is material, we seek discovery. Well, there's no discovery ever sought. So there's statements of uncontroverted facts that we put forth about Kaczynski and her relationship to Morgan Drexen that were never controverted. So whether you look at this as a Rule 12, you've got to accept our complaint to be true, that's in there at 8 to 10. Or whether you look at this as a Rule 56, you know, they have the burden. We have the burden to show standing, but we did look at 513. Because I can't resist after four hours, can I ask you why a single agency, single head of an independent agency is worse than a multi-member commission? Just one 45-second answer for just a peek at the merits. I can't resist. I can't resist. Thank you for the opportunity, Your Honor. I would love to talk about this. I tend to be interested in that. Why is it worse? I don't understand why it's worse. Just succinctly. Okay, so our precedent, our Supreme Court precedent says that historical practice is giving great weight when we're talking about separation of powers or structural issues. Okay, so that's the constitutional principle. They say that this is a multi-member commission argument. It's a policy argument. It is a constitutionally based look at the historical practice. Regulatory agencies of this magnitude, of this power, typically are structured as a multi-member commission like the FTC and the SEC. And the reason is it's because it's an internal restraint on authority to drag American citizens into these courts on enforcement proceedings. When we have FTC cases, we go and we meet with each of the commissioners. It's bipartisan. So you have Democrats. You have Republicans. They don't always disagree. The courts are benefited because you have this roadmap for digital review based on dissenting opinions. It's a restraint. It's an avoidance. Thank you. For the peek at what we have to look forward to potentially someday. My last sentence is just a restraint on that worry that the framers had about concentration of power in the hands of a single individual. Thank you. We'll take the case under review. I'm sorry. I was ready to go. Clearly. Maybe we'll have another chance. Thank you.
judges: Rogers, Kavanaugh, Pillard